COMMONWEALTH of Pennsylvania
Appellee

v.

Sylvester SCOTT, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 15, 2005.

Filed June 20, 2005.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: GANTMAN, PANELLA, and OLSZEWSKI, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Sylvester Scott, appeals from the judgment of sentence entered on June 14, 2004, by the Honorable Chris R. Wogan, Court of Common Pleas of Philadelphia County. After careful review, we affirm.

¶ 2 On March 24, 2004, Officer Wesley Cuffie and his partner, Officer Larry Tankelewicz, were on routine patrol in their marked police cruiser in Southwest Philadelphia. At approximately 8:15 p.m., they were stopped at a red light at 58th and Willows Street, a residential area. While stopped at the traffic light, the officers noticed a Dodge Caravan, operated by Scott, approximately 50 feet away, traveling eastbound on Willows Street. As the Dodge Caravan approached, the officers heard loud music blaring from the van and decided to conduct a traffic stop of the vehicle pursuant to Section 12–1126 of the Philadelphia Traffic Code. Section 12–1126 prohibits sound reproduction devices in vehicles from being played so that they can be heard outside the vehicle at a distance of greater than 25 feet. *See* The Philadelphia Code and Charter, The Traffic Code, Section 12–1126.[1]

---

1. Section 12–1126 states:
   No person, while driving, parked or in control of any vehicle, shall operate a radio, tape player or any other type of sound reproduction device, in any area within the City at a sound level which produces a sound audible at a distance of greater than twenty-five feet from the location of such radio, tape player or other sound reproduction device, unless such device is being used in connection with the holding of a public assembly for which a permit or license has been issued by the city.
   The Philadelphia Code and Charter, The Traffic Code, Section 12–1126. The Traffic Code of the City of Philadelphia was approved and became effective May 6, 1958, and superseded the Traffic Ordinances of March 25, 1946, as amended. *See* 1958 Ordinances, p. 366.

¶ 3 In response to the officers' activation of their overhead lights, Scott pulled his vehicle over at 57th and Willows Street. As the police cruiser approached Scott's vehicle, the officers observed Scott exit his vehicle and start to walk down the street. Officer Cuffie immediately questioned Scott as to where he was going, to which Scott replied that he was going to his girlfriend's house. Officer Cuffie then instructed Scott to get back into his vehicle, and escorted Scott back to the car. While Officer Cuffie was standing by Scott's vehicle he observed, in plain view, a handgun on the floor in front of the passenger seat. Officer Cuffie informed Officer Tankelewicz of his observation and Officer Tankelewicz retrieved the gun. Officer Cuffie then frisked Scott and discovered a holster attached to Scott's belt. Scott was then placed under arrest.

■ ¶ 4 On June 16, 2004, defense counsel made an oral motion to suppress the handgun. Specifically, Scott argued that Section 12–1126 of the Philadelphia Traffic Code is unconstitutionally overbroad and vague under both the Federal Constitution and the Pennsylvania Constitution and, as a result, the police officers lacked probable cause to conduct a traffic stop of the vehicle; therefore, it was argued that the evidence of the handgun must be suppressed under the fruit of the poisonous tree doctrine. Following a hearing, the suppression court denied Scott's suppression mo-

tion and immediately conducted a bench trial on stipulated facts. The trial court ultimately found Scott guilty of carrying a firearm without a license.[2] Subsequent thereto, Scott was sentenced to three (3) years probation. This timely appeal followed, in which Scott again challenges the constitutionality of Section 12–1126. Appellant's Brief, at 3.[3]

■ ¶ 5 Our standard of review where an appellant appeals the denial of a suppression motion is well-established: we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *See Commonwealth v. Wright*, 867 A.2d 1265, 1267 (Pa.Super.2005). We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. *See id.* We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous. *See Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003), *cert. denied*, 540 U.S. 1115, 124 S.Ct. 1053, 157 L.Ed.2d 906 (2004).

¶ 6 In the present case, the facts are undisputed, therefore we must solely determine the propriety of the suppression court's legal determinations. The suppres-

---

**2.** 18 PA.CONS.STAT.ANN. § 6106.

**3.** The Commonwealth Court of Pennsylvania has jurisdiction over appeals from final orders of the courts of common pleas in any case implicating the application, interpretation or enforcement of a local ordinance. *See* 42 PA.CONS.STAT.ANN. § 762(a)(4)(i)(B) ("[T]he Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases: ... criminal matters ... All actions or proceedings arising under any mu-

nicipality ... where is drawn in question the application, interpretation or enforcement of any ... local ordinance ...."). However, the Commonwealth has not objected to this Court exercising jurisdiction over the instant appeal. Therefore, pursuant to Pa.R.A.P., Rule 741(a), Waiver of Objections to Jurisdiction, 42 PA.CONS.STAT.ANN., our jurisdiction is perfected. *See Commonwealth v. Asamoah*, 809 A.2d 943, 945 n. 1 (Pa.Super.2002); *Commonwealth v. Joki*, 330 Pa.Super. 406, 479 A.2d 616 n. 1 (1984).

sion court concluded that Section 12–1126 is neither vague nor overbroad, and consequently, that the police had probable cause to stop Scott's vehicle. As such, the suppression court found that the handgun, which was in plain view, was legally seized.

¶ 7 Scott first argues that the suppression court erred in concluding that Section 12–1126 is not unconstitutionally vague and challenges the ordinance as being void for vagueness both on its face and as applied. *See* Appellant's Brief, at 7. Specifically, Scott argues that Section 12–1126 "gives a person little if any guidance" as to what is prohibited. *Id.*, at 9. Under the appropriate tests as outlined below, we find that the ordinance easily passes muster; it describes the prohibited conduct in readily understandable terms, using precisely quantified standards. Therefore, it provides reasonable certainty to citizens and the police.

■■■ ¶ 8 It is well-established that ordinances are presumed to be constitutional and the party challenging the constitutionality of an ordinance bears a heavy burden of persuasion. *See Commonwealth v. Asamoah*, 809 A.2d 943, 945 (Pa.Super.2002). "[T]he principles and rules of statutory construction apply equally to the interpretation of statutes and to local laws." *Id.* An ordinance is unconstitutionally vague if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited by the law. *See id.*, at 946.[4]

¶ 9 Section 12–1126 provides, in pertinent part, that "[n]o person, while driving, parked or in control of any vehicle, shall operate a radio, tape player or any other type of sound reproduction device ... at a sound level which produces a sound audi-

ble at a distance greater than twenty-five feet from the location of such [sound device].…" The Philadelphia Code and Charter, The Traffic Code, Section 12–1126. The term "audible" is not defined in the Traffic Code. *See* The Philadelphia Code and Charter, The Traffic Code, Section 12–102, Definitions. Thus, to ascertain the meaning of the word "audible" we turn to the rules of statutory construction, *see Asamoah*, 809 A.2d at 945 (the rules of statutory construction are applicable to local laws), which require a court to construe the words of the statute according to their plain meaning. *See* 1 PA.CONS.STAT. ANN. § 1903(a). In Webster's II New College Dictionary 73 (1995), the word "audible" is defined as "[c]apable of being heard."

¶ 10 Accordingly, a plain reading of the ordinance demonstrates that it provides fair notice as to the prohibited conduct: it is a violation of the ordinance to operate a sound reproduction device inside a vehicle, in the City of Philadelphia, so that it is capable of being heard outside of the vehicle at a distance of greater than 25 feet. The distance standard provides an explicit guideline to those charged with enforcing the ordinance. If a law enforcement officer can hear sounds from a sound reproduction device at the proscribed distance, the ordinance has been violated.

■■■ ¶ 11 Because Section 12–1126 provides fair notice as to prohibited conduct, Scott has failed to demonstrate that the ordinance is unconstitutional on its face. We also note that our ruling is consistent with those of other states which have upheld statutes which prohibit audible noises based on a distance standard. *See, e.g.,*

---

4. The due process standards of the Federal and Pennsylvania Constitutions are identical. *See Commonwealth v. Barud*, 545 Pa. 297, 305, 681 A.2d 162, 165 (1996); *Common-*

wealth v. Heinbaugh, 467 Pa. 1, 6, 354 A.2d 244, 246 (1976) (citing *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)).

*State v. Medel*, 139 Idaho 498, 80 P.3d 1099, 1103 (Ct.App.2003) (upholding ordinance as not unconstitutionally vague where it prohibited operating a vehicle's sound system so that it is audible at a distance of 50 feet); *Davis v. State*, 272 Ga. 818, 537 S.E.2d 327, 329 (2000) (finding that statute which prohibits amplified sound from a vehicle which is "plainly audible" at 100 feet is not vague); *People v. Hodges*, 70 Cal.App.4th 1348, 1354, 83 Cal. Rptr.2d 619 (Cal.Ct.App.1999) (ordinance prohibiting a vehicle's sound system from operating where it could be heard 25 feet away not unconstitutionally vague); *Moore v. City of Montgomery*, 720 So.2d 1030, 1032 (Ala.Crim.App.1998) (holding ordinance that prohibited noise audible 5 feet from vehicle not unconstitutionally vague); *Davis v. State*, 710 So.2d 635, 636 (Fla. App. 5th Dist. 1998) (statute making it a violation to play a vehicle's stereo so that the sound therefrom is plainly audible at a distance of 100 feet or more from the vehicle was not vague); *Holland v. City of Tacoma*, 90 Wash.App. 533, 954 P.2d 290, 295 (1998), *review denied*, 136 Wash.2d 1015, 966 P.2d 1278 (1998) (finding ordinance not unconstitutionally vague as the court noted that a person of ordinary intelligence knows what is meant by prohibition of sound that is audible more than 50 feet away).

¶ 12 Additionally, we find Scott's challenge to Section 12–1126 as applied to his conduct meritless. In the present case, Officer Wesley Cuffie testified that he heard music emanating from Scott's vehicle from approximately 50 feet away. *See* N.T., 6/14/04, at 7. Accordingly, the Commonwealth established Scott's clear violation of Section 12–1126. As such, Scott's as applied challenge also fails.

¶ 13 Scott next argues that Section 12–1126 is facially overbroad.[5] An ordinance may be overbroad, "if in its reach it prohibits constitutionally protected conduct." *Grayned v. Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The crucial question is whether the statute sweeps within its prohibitions a substantial amount of conduct that may not be punished under the First Amendment. *See id.*, at 115, 92 S.Ct. 2294. The rationale of the overbreadth doctrine is that third parties not presently before the court may refrain from exercising their constitutionally protected rights for fear of criminal sanctions contained in an overly broad enactment. *See Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). The overbreadth doctrine is an exception to the traditional rules of standing and allows a party to assert the First Amendment rights of those not before the court. *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503–504, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). The overbreadth doctrine applies in First Amendment cases which involve non-com-

---

5. As noted, in his statement of the question presented on appeal, Scott contends that Section 12–1126 is "overly broad in violation of the Pennsylvania and United States Constitutions...." Appellant's Brief, at 3. Scott, however, does not distinguish in his brief between Article I, § 7 of the Pennsylvania Constitution and the First Amendment of the Federal Constitution. *See Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (in case implicating provision of the Pennsylvania Constitution, litigants should brief and ana-lyze, at minimum, text of Pennsylvania constitutional provision, history of provision, including Pennsylvania case law, related case law from other states, and policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence). In his brief, Scott entirely focuses his discussion on the First Amendment; as a consequence, we too shall focus exclusively on the First Amendment.

mercial speech. *See Village of Schaumburg,* 444 U.S. at 634, 100 S.Ct. 826.

¶ 14 "Music, as a form of expression and communication, is protected under the First Amendment." *Ward v. Rock Against Racism,* 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). In addition, the amplification of sound is protected by the First Amendment. *See Saia v. People of the State of New York,* 334 U.S. 558, 559–560, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948). It is well-established, however, that a governmental entity may impose, even in public forums, reasonable time, place and manner restrictions on protected speech. *See Ward,* 491 U.S. at 791, 109 S.Ct. 2746. To be reasonable, the restrictions on protected speech must be content neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information. *See id.; see also, Validity of State or Local Enactment Regulating Sound Amplification in Public Area,* 122 A.L.R. 5th 593, at Section 2.

¶ 15 "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward,* 491 U.S. at 791, 109 S.Ct. 2746 (citation omitted). The controlling factor in the determination is the government's purpose in enacting the restriction. *See id.* A purpose that has no relation to the content of the speech is deemed neutral, even if the restriction affects some speakers or messages and not others. *See id.; see also,* 122 A.L.R. 5th 593, at Section 2 ("A regulation is content neutral when it may be justified without reference to the content of the regulated speech.").

¶ 16 The obvious purpose of Section 12–1126 is to control excess noise emanating from vehicles in the City of Philadelphia. Section 12–1126 restricts excess noise regardless of the content of the communications emanating from sound reproduction devices. Accordingly, Section 12–1126 is content neutral.

¶ 17 We also find that Section 12–1126 is narrowly tailored to serve a significant governmental interest. It is axiomatic that governments have "a substantial interest in protecting its citizens from unwelcome noise." *Ward,* 491 U.S. at 796, 109 S.Ct. 2746 (citation omitted). A government's interest in protecting its citizens from unwelcome and excessive noise extends to traditional public forums such as city streets. *See id.* In the present case, the aim of Section 12–1126 is to, as noted, abate excessive noise emanating from vehicles within the City of Philadelphia. The city's interest in stemming obnoxiously loud noise, as circumscribed by Section 12–1126, is substantial.

¶ 18 Although perhaps Section 12–1126 could have been drafted in an even narrower manner, we are mindful that a content neutral time, place, and manner regulation of protected speech need not be the least restrictive means of accomplishing the government's purpose. *See id.,* at 797–800, 109 S.Ct. 2746. In this regard, a regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less speech-restrictive alternative; all that is required is that the means chosen not be substantially broader than necessary to achieve the government's interest. *See id.,* at 800, 109 S.Ct. 2746. The court should not have to sift through all the available or imagined alternative means of regulating sound volume in order to determine whether the city's solution was "the least intru-

sive means" of achieving the desired end. This "less-restrictive-alternative analysis ... has never been a part of the inquiry into the validity of a time, place, and manner regulation." *Regan v. Time, Inc.,* 468 U.S. 641, 657, 104 S.Ct. 3262, 3271, 82 L.Ed.2d 487 (1984) (opinion of WHITE, J.). Instead, our cases quite clearly hold that restrictions on the time, place, or manner of protected speech are not invalid "simply because there is some imaginable alternative that might be less burdensome on speech." *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985).

*Id.,* at 797, 109 S.Ct. 2746; *see also, Hill v. Colorado,* 530 U.S. 703, 725, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). It is important to note that Section 12–1126 further narrows its application by exempting from its purview sound reproduction devices that "are used in connection with the holding of public assembly for which a permit or license has been issued by the City." The Philadelphia Code and Charter, The Traffic Code, Section 12–1126.

¶ 19 Lastly, we find that Section 12–1126 leaves open ample alternative channels for the enjoyment of music or other forms of communication. Section 12–1126 merely limits the volume of the sound radiating from reproduction devices in vehicles in the City of Philadelphia. Music, or any other amplified communication, coming from a sound reproduction device can be enjoyed—in its entirety—but simply at reasonable volume levels.

¶ 20 Accordingly, Scott has failed to establish that Section 12–1126 is facially overbroad. We again note that our decision is in accord with decisions from other states that have considered overbreadth challenges to statutes which prohibit certain audible noises. *See, e.g., State v. Medel,* 139 Idaho 498, 80 P.3d 1099, 1102–1103

(Ct.App.2003) (utilizing a distance standard); *People v. Bakolas,* 59 N.Y.2d 51, 462 N.Y.S.2d 844, 449 N.E.2d 738 (1983).

¶ 21 In conclusion, as we agree with the suppression court that Section 12–1126 is not unconstitutionally overbroad or vague, we find that the traffic stop in the present case was based on probable cause and that the subsequent seizure of the handgun was legal.

¶ 22 Judgment of sentence affirmed.