**COMMONWEALTH of Pennsylvania,**

v.

**Anthony Wayne HUGHES, Appellant.**

Superior Court of Pennsylvania.

Argued March 16, 2006.
Filed Sept. 25, 2006.

Jeffrey S. Loomis, Mansfield, for appellant.

George W. Wheeler, Asst. Dist. Atty., Wellsboro, for Com., appellee.

BEFORE: STEVENS, McCAFFERY, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Anthony Wayne Hughes, appeals from the judgment of sentence entered on August 15, 2005 by the Honorable Robert E. Dalton, Jr., Court of Common Pleas of Tioga County. After careful review, we affirm.

¶ 2 On September 14, 2004, Troopers Robert J. Wolbert and Jason Miller of the Pennsylvania State Police were on midnight patrol traveling northbound in a marked patrol car on SR–15, a limited access highway in Liberty Township, Tioga County. The Troopers were traveling in the left northbound lane when, at approximately 12:40 a.m., they noticed Hughes' vehicle traveling in front of them in the right northbound lane. The Troopers intended to pass Hughes until they observed his vehicle swerve right onto the berm, then back into the right lane, and then left across the white dotted line into their lane. According to Trooper Wolbert, their patrol car was within approximately three to four car lengths when thirty to forty percent of Hughes' vehicle drifted across the dotted line and then back into the lane without a turn signal. At that point, the Troopers slowed down and began to follow Hughes' vehicle in the right northbound lane. They followed Hughes' vehicle for one-half to three quarters of a mile and observed his vehicle swerve into the other lane two more times.

¶ 3 Trooper Wolbert initiated a traffic stop to investigate the cause of Hughes' erratic driving. Upon approaching the driver-side window, Trooper Wolbert noticed a strong odor of alcohol. In answering questions from Trooper Wolbert, Hughes stated that he had consumed alcohol. Trooper Wolbert also asked Hughes if he had any medical reason for not wearing his seatbelt and Hughes replied that he did not. Trooper Wolbert then proceeded to administer field sobriety tests, which Hughes, by his own admission, was unable to complete. Trooper Wolbert determined that Hughes was unfit to operate a vehicle and placed him under arrest. Hughes submitted to a blood test less than hour after being arrested and his blood alcohol content was 0.198 percent.

¶ 4 Prior to trial, Hughes filed an omnibus pretrial motion seeking to suppress the evidence obtained from the vehicle stop leading to the arrest for driving under the influence, claiming that there was no probable cause to stop his vehicle. The trial court held a hearing on Hughes' motion to suppress on January 17, 2005 after which, the motion was denied. Following a bench trial, Hughes was convicted of Driving Under the Influence of Alcohol,[1] Careless Driving,[2] and Failure to Use Safety Belt System.[3] Hughes was sentenced to a minimum of ninety days to sixty months incarceration. This timely appeal followed.

¶ 5 On appeal, Hughes raises the following issues for our review:

---

1. 75 Pa.Cons.Stat.Ann. § 3802(a)(1); 75 Pa. Cons.Stat.Ann. § 3802(C).

2. 75 Pa.Cons.Stat.Ann. § 3714.

3. 75 Pa.Cons.Stat.Ann. § 4581(A)(2).

1. Whether the trial court erred by failing to suppress the evidence as Appellant's arrest was illegal?

2. Whether the trial court abused its discretion in accepting the arresting officer's testimony concerning the basis for the traffic stop when conflicting testimony was presented at the preliminary hearing, suppression hearing, and trial?

Appellant's Brief at 6.

¶ 6 Initially, we note that our standard of review when an appellant appeals the denial of a suppression motion is well established. We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous. *Commonwealth v. O'Black*, 897 A.2d 1234, 1240 (Pa.Super.2006), *citing Commonwealth v. Scott*, 878 A.2d 874, 877 (Pa.Super.2005), *appeal denied*, 586 Pa. 749, 892 A.2d 823 (2005).

¶ 7 With this standard in mind, we address Hughes' first claim that the trial court erred by failing to suppress the evidence because the arrest was illegal. A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. *Commonwealth v. Conrad*, 892 A.2d 826, 829 (Pa.Super.2006), *appeal denied*, 588 Pa. 747, 902 A.2d 1239 (2006). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." *Id., quoting Commonwealth v. Cook*, 558 Pa. 50, 57, 735 A.2d 673, 676 (1999). In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. *In re D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give "due weight ⋯ to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *Cook*, 558 Pa. at 57, 735 A.2d at 676 (citation omitted). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Cook*, 735 A.2d at 676.

¶ 8 Based on his experience as a law enforcement officer, Trooper Wolbert had sufficient reason to suspect that Hughes was committing a crime based upon his observation of Hughes' erratic driving, and therefore the detention and subsequent DUI arrest were both justified. The statutory standard for investigation by police officers provides that, "whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop the vehicle...." 75 Pa.Cons.Stat.Ann. § 6308(b).

¶ 9 Trooper Wolbert, who had been employed as a Trooper with the Pennsylvania State Police for nine years at the time of arrest, had a reasonable basis to suspect that Hughes was driving while intoxicated. He and Trooper Miller were going to pass Hughes's vehicle but deemed it unsafe because Hughes' vehicle was swerving across the divided line into the other lane. They followed Hughes for less than a mile and observed him commit the same traffic vio-

lation[4] at least twice before initiating the stop. Swerving in and out of a lane of traffic was a violation indicative of a DUI offense in Trooper Wolbert's experience.

■ ¶ 10 Upon approaching the vehicle, Trooper Wolbert, who was trained in observing violations indicative of DUI offenses as well as administering standard field sobriety tests, noticed a strong odor of alcohol from Hughes and that his eyes were extremely bloodshot. Hughes admitted that he had been drinking. After administering the field sobriety tests, which Hughes failed, Trooper Wolbert determined that Hughes was unable operate a vehicle safely and arrested him. The blood test revealed that Hughes' blood alcohol level was 0.198 percent.[5]

¶ 11 Considering the facts within the totality of circumstances and Trooper Wolbert's experience as a trained police officer, we find that Hughes' traffic violations provided an adequate basis for reasonable suspicion justifying the initial traffic stop, and that the evidence of Hughes' intoxication from his odor of alcohol, bloodshot eyes, and failure to perform the field sobriety tests were sufficient to justify the arrest for DUI.

¶ 12 Hughes next contends that it was an abuse of discretion for the trial court to accept Trooper Wolbert's testimony concerning the basis for the traffic stop because conflicting testimony was presented at the preliminary hearing, suppression hearing, and trial. Hughes is essentially challenging the trial court's determination of Trooper Wolbert's credibility, claiming that there were "significant discrepancies in the arresting officer's testimony as the

case progressed through the court system". Specifically, Hughes argues that Trooper Wolbert testified at the preliminary hearing that his patrol car was "five, six or seven car lengths" behind Hughes' vehicle when he first noticed him swerve, but at trial Trooper Wolbert testified that the distance between the vehicles was "three to four car lengths". Hughes also argues that Trooper Wolbert's recollections about how erratically the vehicle was swerving and by how many inches it crossed the dotted line changed. Appellant's Brief at 19–20.

■ ¶ 13 It is well established that our Court will not reverse a trial court's credibility determination absent the court's abuse of discretion as fact finder. In a bench trial, as in a jury trial, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Zingarelli* 839 A.2d 1064, 1069 (Pa.Super.2003), *appeal denied,* 579 Pa. 692, 856 A.2d 834 (2004). Additionally, "the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Emler,* 903 A.2d 1273, 1276 (Pa.Super.2006).

¶ 14 We fail to see how the trial court's conclusions were an abuse of discretion. As the fact-finder, the trial court was in the best position to assess the credibility of the witnesses' testimony and other evi-

---

4. 75 PA.CONS.STAT.ANN. § 3309(1) provides that, "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety."

5. 75 PA.CONS.STAT.ANN § 3802(c) categorizes any alcohol concentration above 0.16 percent as the "Highest rate of alcohol".

 

dence. Even if Hughes is correct in arguing that there were inconsistencies in Trooper Wolbert's testimony, we do not agree with his argument that these were "significant discrepancies"; rather, they were innocuous in light of the overwhelming evidence beyond Trooper Wolbert's testimony to support Hughes' convictions.

¶ 15 Judgment of sentence affirmed. Jurisdiction relinquished.