J. S44010/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
ISAIAH BRAXTON, : No. 2921 EDA 2014
:
Appellant :

Appeal from the Judgment of Sentence, September 16, 2014,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0014113-2012

BEFORE: FORD ELLIOTT, P.J.E., STABILE AND MUSMANNO, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JULY 11, 2016**

Isaiah Braxton appeals the judgment of sentence in which the Court of Common Pleas of Philadelphia County sentenced him to serve a term of three to six years' imprisonment for the offense of possession of a firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1). He was concurrently sentenced to a term of three to six years' imprisonment for carrying a concealed weapon, 18 Pa.C.S.A. § 6106(a)(1). The trial court also imposed a term of two years' probation for carrying a firearm on Philadelphia streets, 18 Pa.C.S.A. § 6108, to be served consecutively to the prison sentence. Appellant was also concurrently placed on probation for a term of two years for possessing an instrument of crime, 18 Pa.C.S.A. § 907(a). Appellant was convicted of possession of a controlled substance but was sentenced to no further penalty. 35 P.S. § 780-113(a)(19).

The record reflects that on October 12, 2012, Officer Jorge Soto ("Officer Soto") of the City of Philadelphia Police Department conducted a narcotics surveillance from an unmarked vehicle in the area of 60th and Market Street in Philadelphia. (Notes of testimony, July 2, 2013 at 7-8.) At approximately 8:52 p.m. on October 12, 2012, Officer Soto

> observed an unknown black male wearing a brown Jeff cap, tan coat, and brown slacks. He exited a white Lexus 300 -- RX 300 . . . .
>
> He pulled up . . . to the corner -- actually, just east of 60th on Market Street. He parked. He exited that vehicle. He walked over to the bar and approached the [appellant].
>
> Both the [appellant] and the unknown black male engaged in a brief conversation. After the brief conversation, the unknown black male produced an unknown amount of U.S. currency. He handed the [appellant] an unknown amount of U.S. currency. In return, the [appellant] then handed the unknown black male unknown items in a pinching motion into an open palm.

*Id.* at 9.

The unknown black male drove off, and the vehicle could not be stopped. At approximately 8:55 p.m., Officer Soto observed an unknown black male exit a black Durango that was parked at the same location as the Lexus. Officer Soto saw the male approach appellant. After a brief conversation, the unknown black male produced an unknown amount of U.S. currency and gave it to appellant in return for "unknown items in a pinching

motion to an open hand." (*Id.* at 11-12.) After the transaction, appellant walked to a white Chevy Malibu. Officer Soto then observed appellant reach

> up towards the light fixture. He pulled it down. And he put something . . . I observed a clear plastic bag containing unknown items at that point . . . . He placed the object into that little hole, replaced the light fixture back up, and exited the vehicle and crossed the street again.

*Id.* at 14. Officer Soto radioed for Officer Vincent Perone ("Officer Perone") to place appellant into custody. (*Id.* at 43.) Officer Perone found $972 on appellant's person. (*Id.* at 44.) Officer Kustra, an officer in the K-9 unit, brought his dog, Yuri, to the scene. Yuri had a positive reaction to the Chevy Malibu. (*Id.* at 46.)

Officer Ranae Jeffcoat ("Officer Jeffcoat") obtained a search warrant to search the Chevy Malibu. (*Id.* at 48.) Officer Jeffcoat recovered a silver .45 caliber handgun that was loaded with one round in the chamber and eight live rounds in the magazine, "along with one clear sandwich bag containing 28-23 pink packets and two clear, along with two clear plastic bags tied in a knot, alleged crack cocaine." (*Id.* at 49-50.) The packets were recovered from the inside of the Chevy Malibu inside the light fixture. (*Id.* at 50.)

Appellant was charged with the five crimes for which he was convicted as well as possession with intent to deliver crack cocaine, 35 P.S. § 780-113(a)(30), for which he was found not guilty at trial.

Appellant moved to suppress physical evidence, and alleged that the police officers lacked a reasonable suspicion or probable cause to arrest him and that there was not probable cause to search the Chevy Malibu.

The trial court conducted a hearing on the suppression motion on July 2, 2013. Officer Soto testified regarding his observations of appellant with the two individuals. Officer Soto also testified that he had been a police officer for eight years and had worked in narcotics enforcement for six years and had observed "thousands" of drug transactions on the street. Officer Soto explained that in the typical drug transaction, one party walks up to the other, they engage in a brief conversation, items are exchanged, and the parties go their separate ways. Officer Soto testified that he believed appellant exchanged drugs for money in the two encounters he observed. (*Id.* at 10-11.) On cross-examination, Officer Soto admitted that he did not know for sure that appellant exchanged drugs for money. (*Id.* at 26-28.)

Officer Perone testified regarding his arrest of appellant. The parties stipulated that Yuri, the K-9 dog, had a positive reaction to the Chevy Malibu. Officer Jeffcoat identified the search warrant and the affidavit for the search warrant to search the Chevy Malibu. Officer Jeffcoat also testified regarding the results of the search. Appellant testified that he owned the Chevy Malibu that was confiscated by the police. (*Id.* at 72.)

The trial court credited the testimony of the police officers and found that based on Officer Soto's years of experience, including six years in the narcotics field unit and his experience observing thousands of drug transactions, that he had probable cause to arrest appellant and denied the motion to suppress the United States currency recovered incident to the arrest. The trial court also found that the positive canine sniff gave rise to probable cause to search the vehicle and that the affidavit of probable cause included specific facts to establish probable cause to search the Chevy Malibu where the crack cocaine was found. The trial court denied the motion to suppress the fruits of the search of the Chevy Malibu.

Appellant contends that the trial court committed an error of law when it denied the motion to suppress.

> Initially, we note that our standard of review when an appellant appeals the denial of a suppression motion is well established. We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous. *Commonwealth v. O'Black*, 897 A.2d 1234, 1240 (Pa.Super. 2006), citing *Commonwealth v. Scott*, 878 A.2d 874, 877 (Pa.Super. 2005), *appeal denied*, 586 Pa. 749, 892 A.2d 823 (2005).

*Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa.Super. 2006). "It is within the sole province of the suppression court judge to weigh the credibility of the witnesses, and he or she is entitled to believe all, part, or none of the evidence presented." *Commonwealth v. Snell*, 811 A.2d 581, 584 (Pa.Super. 2002), *appeal denied*, 820 A.2d 162 (Pa. 2003) (citation omitted).

Initially, appellant contends that the trial court erred when it denied the suppression motion because there was not probable cause to arrest him.

> There exists [sic] three levels of interactions between citizens and police officers under our Fourth Amendment jurisprudence: The first of these is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause. An investigative detention constitutes a seizure of the person and must be supported by reasonable suspicion that those detained are engaged in criminal activity.

*Commonwealth v. Carter*, 779 A.2d 591, 593 (Pa.Super. 2001), quoting *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000).

> Probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime. In determining whether probable cause existed in a particular situation, a court will look not just at one or two

individual factors, but will consider the "totality of the circumstances" as they appeared to the arresting officer:

> When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element. . . . We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might. . . . Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.
>
> ***Commonwealth v. Simmons***, 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234 (1982), quoting ***Commonwealth v. Kazior***, 269 Pa.Super. 518, 522, 410 A.2d 822, 824 (1979). It is only the probability, and not a ***prima facie*** showing, of criminal activity that is the standard of probable cause for a warrantless arrest. Probable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely, inference.

***Commonwealth v. Quiles***, 619 A.2d 291, 298 (1993) (***en banc***) (other citations omitted).

In ***Commonwealth v. Thompson***, 985 A.2d 928, 935 (Pa. 2009), the Pennsylvania Supreme Court held that a police officer's experience may be regarded as a relevant factor in determining probable cause as long as the officer establishes a nexus between his experience and the search, arrest, or seizure of evidence.

The parties agree that appellant was arrested. Therefore, the inquiry is whether the Police Department had probable cause to arrest him. The trial court specifically found that Officer Soto observed two instances where individuals exited their vehicles, approached appellant on foot, and gave him money in exchange for a bag which appellant handed to each individual in a pinching motion. Officer Soto also observed appellant get into a Chevy Malibu, open the overhead light fixture, and place a clear plastic bag containing some sort of objects into the light fixture. Appellant then exited the vehicle and stood outside a bar. The trial court also noted Officer Soto's eight years of experience on the police force including six years in the Narcotics Field Unit and his observation of "thousands" of drug transactions to determine that the police department had probable cause to arrest appellant.

Appellant asserts that the facts elicited by the Commonwealth at the hearing on the motion to suppress failed to rise to the level necessary to establish probable cause because there was no evidence of a second party to the transaction who possessed drugs, no evidence that the neighborhood, house, or person was targeted as a result of suspected drug activity, and there was no surreptitious activity. Further, there were not multiple, complex, suspicious transactions; no drugs or containers commonly used to hold drugs were found; and no complaints or tips about the area or the appellant as a possible drug dealer.

While those factors were significant in other cases, this court must review the facts as found here. A police officer with a wealth of experience in observing street drug transactions saw two individuals in a short period of time approach the appellant and give him money in exchange for whatever was contained in the small bags. Though Officer Soto could not know the precise contents of the bags, based on his experience, he believed that they contained drugs. Further, when he saw appellant place items in the light fixture in appellant's car, Officer Soto believed the items were drugs because he knew of approximately five other times when drugs were found in a compartment in a vehicle after a search warrant was issued. (Notes of testimony, 7/2/13 at 15-17.) This court is satisfied that Officer Soto had probable cause to order the arrest of appellant. *See Thompson* (an experienced police officer had probable cause when he saw a single hand-to-hand exchange which was in an area he knew to have frequent heroin sales). *See also Commonwealth v. Dixon*, 997 A.2d 368 (Pa.Super. 2010) (officer had probable cause to arrest following his observance of a hand-to-hand exchange on a public street at midday where officer had made forty drug arrests in the immediate vicinity). Although there was no testimony that the transactions occurred in a high-traffic drug area, Officer Soto's detailed testimony coupled with his extensive experience supported a finding of probable cause.

Appellant next contends that the affidavit of probable cause for the search warrant to search the Chevy Malibu was insufficient because the only additional fact beyond Officer Soto's observations was the fact that a K-9 dog hit on the car.

Pa.R.Crim.P. 203(b) provides that "[n]o search warrant will issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority." According to Pa.R.Crim.P. 206, the affidavits must

> [S]et forth specifically the facts and circumstances which form the basis for the affiant's conclusion that there is probable cause to believe that the items or property identified are evidence or the fruit of a crime, or are contraband, or are expected to be otherwise unlawfully possessed or subject to seizure and that these items or property are or are expected to be located on the particular person or at the particular place described.

Pa.R.Crim.P. 206.

With respect to the role of the issuing magistrate, this court has stated:

> The task of the issuing magistrate is to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed.

> [***Commonwealth v. Coleman***, 769 A.2d 462 (Pa.Super. 2001)]. A magistrate's finding of probable cause "must be based on facts described within the four corners of the affidavit[.]" ***Commonwealth v. Stamps***, 493 Pa. 530, 427 A.2d 141, 143 (1981), and "our scope of review of a suppression court's ruling [on a magistrate's finding of probable cause] is confined primarily to questions of law." ***Id.*** (citing ***Commonwealth v. Sharp***, 453 Pa.Super. 349, 683 A.2d 1219, 1221 (1996).

***Commonwealth v. Smith***, 784 A.2d 182, 185 (Pa.Super. 2001).

"Probable cause to issue a search warrant has been defined as those facts reasonably necessary to show (1) that the items sought are connected with criminal activity, and (2) that the items will be found in the place to be searched." ***Commonwealth v. Kanouff***, 462 A.2d 251, 252 (Pa.Super. 1988), quoting ***Commonwealth v. Council***, 421 A.2d 623, 627 (Pa. 1980). "The facts stated in an affidavit will support a search warrant only when they would persuade a reasonable person that there is probable cause for a search; mere suspicion or conjecture is insufficient." ***Id.***

Here, Officer Jeffcoat's affidavit of probable cause provided a description of what Officer Soto observed, that appellant was taken into police custody, and that police recovered $972 from appellant. Officer Jeffcoat also stated, "At approx. 9:15 p.m. Officer's [sic] called a K-9 Unit in to the white Chevy Malibu. K-10 Unit Officer Kenneth Kustra #2688 and his dog Yuri #567 responded. Yuri hit on the driver's side door." (Continuation of Probal [sic] Cause for Search & Seizure Warrant #166803, October 13, 2012, ("Affidavit") at 1.) Officer Jeffcoat also stated that she

- 11 -

believed the Chevy Malibu was used to store illegal narcotics for sales.  (***Id.*** at 1.)

Appellant argues that the Affidavit failed to establish probable cause because it mostly relied on Officer Soto's observations, which appellant believes failed to establish probable cause to justify the arrest of appellant. This court has already determined that Officer Soto's observations justified the arrest of appellant, so this argument has no merit.  He also argues that because the arrest was illegal, everything that flowed from there, including the warrant and the search of the car, was illegal.  As we have determined that the arrest was supported by probable cause, this argument, too, has no merit.

Appellant also contends that the use of the K-9 dog did not establish probable cause because the affidavit did not state that the dog was a certified drug detecting dog.

In ***Commonwealth v. Johnston***, 530 A.2d 74 (Pa. 1987), the Pennsylvania Supreme Court held that an affidavit referencing a K-9 drug sniffing dog was sufficient to establish probable cause where the affidavit contained enough information to indicate that the dog that was used to conduct a sniff search of a storage facility where illegal narcotics were discovered was not an ordinary police dog who might "alert" to anything but was trained to indicate the presence of narcotics.

Appellant is correct that the affidavit did not contain any information about the training of the dog, Yuri. Based on **Johnson**, the information concerning the sniff of the front door of the Chevy Malibu did not support the finding of probable cause to issue the warrant.

However, even without this information, a reviewing court must determine whether, based on other information contained in the affidavit, there was probable cause to issue the warrant. **Commonwealth v. West**, 937 A.2d 516, 529-530 (Pa.Super. 2007).

Here, the other information contained in the affidavit regarding Officer Soto's observations support the finding of probable cause: his observation of two suspected drug transactions and his observation of appellant placing a clear plastic bag, which contained small unknown objects, into the interior light fixture of the car. This information served as probable cause. This court concludes that the trial court did not err when it denied the motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2016