J-S21033-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DIONNE LEE MCKELVIN, | : | |
| | : | |
| Appellant | : | No. 1335 WDA 2016 |

Appeal from the Judgment of Sentence April 26, 2016
in the Court of Common Pleas of Westmoreland County
Criminal Division, at No(s): CP-65-CR-0002790-2015

BEFORE:    LAZARUS, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED MAY 26, 2017**

Dionne Lee McKelvin (Appellant) appeals from the judgment of sentence entered April 26, 2016, after he was found guilty of burglary and criminal trespass.  Upon review, we affirm.

The trial court set forth the relevant factual and procedural background of this case as follows.

> Margaret Hill testified that on the afternoon before the crime, June 14, 2014, she was working as an assistant manager at First Niagara Bank at 411 Clay Avenue, Jeanette, Westmoreland County.  Hill testified that before the bank closed for the evening, employees performed a full inspection upstairs and downstairs to ensure that the bank was empty.  Employees then activated the security alarm for both the inner and outer doors of the bank.  Hill confirmed that the bank was also using video surveillance at the time.  She testified that at closing, the money from the tellers' bank drawers was placed in the bank's vault.

---

*Retired Senior Judge assigned to the Superior Court.

During the early morning hours of June 15, 2014, Hill received a phone call from the bank's security company stating that there had been a break-in as well as shots fired at the bank. Motion sensors had also been activated. Upon receiving the call, Hill drove to the bank to observe the damage. She stated that the bank had two outside doors; one of them had been shattered and the door had fallen on top of the glass. The other was shattered, and blood was visible near the ground. She also testified that there was a blood trail leading into the teller line. Nothing inside the bank appeared to be missing. She noted, however, that a drawer behind the teller line had been opened, which contained only shipping bags, and remained in the drawer after the break-in. She stated that she watched the surveillance video along with Sergeant Donald Johnston. The surveillance video was not preserved for trial; however, the pair was able to make video snapshots from the video.

Sergeant Donald Johnston of the Jeannette Police Department testified that he was on duty in the early morning hours of June 15, 2014. At 3:19 a.m., he received a dispatch stating that shots had been fired at the 400 block of Clay Avenue. Westmoreland County 9-1-1 indicated that an individual had answered the phone at the bank, but quickly hung up. After arriving at the bank, Sergeant Johnston noticed broken glass from the front doors. At that point, he contacted the Westmoreland County Detective's Bureau to aid in the investigation.

Lieutenant O'Neal of the Jeannette Police Department arrived soon after, and noted what appeared to be blood droplets leading from the bank on the sidewalk heading west on Clay Avenue. Sergeant Johnston followed the droplets toward South 5th Street, approximately one-half block from the bank. At the end of the trail of droplets, he observed a burgundy GMC Yukon parked on the corner of the sidewalk. Sergeant Johnston recognized the vehicle as belonging to [Appellant]. He also testified that he had seen [Appellant] operating the vehicle earlier that evening.

Sergeant Johnston then reviewed the snapshots created from the surveillance footage and was able to identify [Appellant] as the individual who entered the bank. After recognizing [Appellant] in the surveillance video and as the

owner of the vehicle parked in the street, Sergeant Johnston issued a [be on the lookout (BOLO)] for [Appellant]. When Sergeant Johnston travelled back outside, the Yukon was gone. At that point, Sergeant Johnston, [who had Appellant's] phone number on file, contacted [Appellant], who agreed to meet with the Jeanette Police Department.

Sergeant Johnston also testified that [Appellant] had called 9-1-1 earlier in the day to report that there were ghosts in his home, and that [Appellant] had a history of mental health issues. He indicated that on the day before the crime, [Appellant] appeared agitated and nervous.

Detective Hugh Shearer testified that he was contacted by officers in the early morning hours of June 15, 2014 regarding the break-in. He arrived at the First Niagara Bank at approximately 4:45 a.m. After he arrived at the scene, he travelled to the Jeanette Police Station, where he met [Appellant]. He stated that there were injuries to [Appellant's] right hand. Specifically, his knuckles were scraped and the fronts of his hands were bleeding. He also noted that his clothing had spots which appeared to be blood. Detective Shearer then returned to the crime scene at approximately [6:00] a.m.

Detective Shearer then began examining the entrance to the bank. He noted drops of a red stain consistent with blood leading from the ATM machine in the front right corner of the bank leading down the hill away from the bank. Detective Shearer also photographed the shattered front doors of the building. He stated that he identified shell casings on the floor of the front vestibule which were from a 9 millimeter pistol. Moreover, there was also one present on the sidewalk, and three discharged on the vestibule floor. He also noted the impression of a shoe outsole, which was identified as an Air Nike, and was embedded with the logo "i5" in the same location.

Later that morning, [Appellant] was served with a search warrant for his residence. A buccal swab was collected from [Appellant], along with a blood sample for the purposes of DNA testing. A pair of Air Nike shoes was recovered from [Appellant's] residence. Detective Shearer noted that there were fragments of glass embedded in the bottom of the shoes'

soles. He testified that in the tongue of the shoes, larger shards of glass were embedded within the laces. The same logo, "i5," was also found on the recovered shoes.

Inside the bank, four droplets of blood were recovered near the tellers' desks. Three shell casings were also found in the back of the bank. The shell .casings were analyzed and identified as belonging to TulAmmo 9 millimeter pistol cartridges. TulAmmo 9 millimeter shell cartridges were also recovered from [Appellant's] home pursuant to the search warrant. A ballistics report was ordered, which showed that the four shell casings analyzed were all discharged from the same firearm. A serology report was also ordered, where blood was lifted from the floor of the lobby of the bank. Compared to the buccal sample taken from [Appellant], the samples matched, with the probability of selecting an unrelated individual being 1 in 10 decillion from the Caucasian community, and 1 in 180 nonillion from the African American population.

[Appellant] was charged with one count of burglary - not adapted for overnight accommodations, no person present, 18 Pa.C.S.A. §3502(a)(4), one count of criminal trespass, 18 Pa.C.S.A. §3503(a)(1)(ii), and one count of person not to possess a firearm, 18 Pa.C.S.A. §6105(c)(2).

A jury found [Appellant] guilty of burglary and criminal trespass, and not guilty of person not to possess a firearm on January 14, 2016. [Appellant] was sentenced on April 26, 2016 at count one to an aggregate term of one and one half to ten years['] incarceration. Count 2 merged with count one.

Trial Court Opinion, 8/15/2016, at 1-6 (citations and unnecessary capitalization omitted).

Appellant filed a post-sentence motion on May 5, 2016. No hearing was held, and on August 15, 2016, the trial court denied Appellant's motion.

This timely-filed appeal followed, wherein Appellant presents the following issues for our review.[1]

> 1. Whether the [trial court] erred in determining [] Appellant's [b]urglary conviction was supported by sufficient evidence.
>
> 2. Whether the [trial court] abused its discretion in sentencing [] Appellant to the maximum lawful sentence for [burglary - not adapted for overnight accommodation, no person present].

Appellant's Brief 2.

Appellant's first issue challenges the sufficiency of the evidence to sustain his burglary conviction. Accordingly, we bear in mind the following.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[1] In response to Appellant's concise statement, the trial court submitted a statement stating it believed that its August 15, 2016 opinion following Appellant's post-sentence motion sufficiently addressed all the issues raised by Appellant and thus, the court would rely on that opinion for the purposes of this appeal. *See* Statement of the Court, 10/18/2016.

> Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (internal quotation marks and citations omitted).

To be found guilty of burglary, not adapted for overnight accommodation, no person present, it must be proven that an individual, having the intent to commit a crime therein, "enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S § 3502(a)(4).

Instantly, Appellant concedes he forced his way into the bank, but argues the Commonwealth failed to prove he forcibly entered the bank with the intent to commit a crime. Appellant's Brief at 6. His argument is as follows: "Though the Commonwealth was under no obligation to prove which crime [] Appellant intended to commit, in full consideration of [] Appellant's suspect mental health on the day in question, it is unclear [] Appellant intended to commit any subsequent offenses." *Id.* at 7.

As correctly cited by the trial court, "the Pennsylvania Supreme Court has rejected a *per se* assumption that forced entry alone is sufficient to allow a jury to infer intent to commit an additional criminal act." Trial Court Opinion, 8/15/2016, at 5 (citing *Commonwealth v. Wilamowski*, 633

A.2d 141, 144 (Pa. 1993)). In **Wilamowski**, our Supreme Court concluded that a "totality of the circumstances" approach was necessary when evaluating whether an actor unlawfully entered by criminal means with the intent to commit a crime. "The Commonwealth must establish, as part of its evidentiary burden, additional evidence that goes beyond the mere breaking in of a door or window. Without this evidence the required inference of intent will derive from mere conjecture or surmise and a defendant's right to rely on a presumption of innocence will be little more that illusory." 633 A.2d, at 144.

Reviewing the evidence in favor of the verdict winner, the testimony established that Appellant had forcibly entered the First Niagara Bank in Jeannette around 3:00 a.m. N.T., 1/13/2016, at 55-58. His forcible entry occurred when he kicked and shot his way through the locked front door, which set off an alarm. *Id.* at 55-57. The break-in activated the security system, and the security company attempted to contact the bank. Sergeant Johnston testified that he was informed that someone inside the bank had answered the phone but quickly hung up. *Id.* at 55. The bank assistant manager, Ms. Hill, who received a call from the security company, testified that she went to the bank and once there, noticed that a drawer behind a teller station had been opened. *Id.* at 43-44. Ms. Hill stated that before closing the bank she removed all money from the teller drawers and placed

them in the vault. *Id.* at 43. Appellant left the bank before police arrived. *Id.* at 58.

Examining the foregoing and reviewing the totality of the circumstances, we find that there was sufficient evidence presented to show Appellant unlawfully entered the bank with the intent to commit a crime therein. In doing so, we find this case distinguishable from *Wilamowski*, wherein the defendant's conviction of burglary was reversed on appeal because the Commonwealth failed to establish that the defendant, who kicked at a door and tore it off its hinges, intended to commit a crime inside. *See Wilamowski*, 633 A.2d at 144 (Noting that the defendant "broke the door and apparently walked away from it without any showing that he entered the structure or attempted to enter. His path into the structure was now unobstructed, but he chose to walk away and go to the neighbor's house to ask for directions."). Here, Appellant forcibly entered the bank after it had closed and once inside, opened one of the teller drawers. Based on this evidence, one can infer Appellant's intention was to commit a crime.

Furthermore, we note that at trial Appellant elicited testimony concerning his mental health to attempt to rebut the Commonwealth's theory that Appellant had entered the bank with the intent to commit a crime. Nonetheless, in light of the verdict, the jury, sitting as finder of fact, found the Commonwealth had met its burden. *See Commonwealth v. Chambers*, 599 A.2d 630, 642 (Pa. 1991) ("Issues of credibility are

properly left to the trier of fact for resolution, and the finder of fact is free to believe all, part, or none of the evidence."). *See also Commonwealth v. Hughes*, 908 A.2d 924, 928 (Pa. Super. 2006) ("[E]vidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.").

Based upon the foregoing, we cannot agree with Appellant that the evidence presented was insufficient to prove that he intended to commit a crime when he forcibly entered the bank. Accordingly, Appellant's sufficiency-of-the-evidence challenge fails.

Appellant's final issue challenges the discretionary aspects of his sentence.

> It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.
>
> > Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely [filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Disalvo*, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

The record reflects that Appellant timely filed a notice of appeal and a motion for reconsideration of his sentence. However, Appellant has failed to include in his brief a statement pursuant to Pa.R.A.P. 2119(f),[2] and the Commonwealth has objected to this omission. Commonwealth's Brief at 5. Appellant, therefore, has waived this issue. *See Commonwealth v. Roser*, 914 A.2d 447, 457 (Pa. Super. 2006) ("A failure to include the Rule 2119(f) statement does not automatically waive an appellant's [discretionary aspects of sentencing] argument; however, we are precluded from reaching the merits of the claim when the Commonwealth lodges an objection to the omission of the statement.") (quoting *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006)).

Accordingly, after a review of the briefs, record, and applicable case law, we are not persuaded that either of Appellant's issues warrants relief from this Court.

Judgment of sentence affirmed.

---

[2] *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005) (quoting *Commonwealth v. Mouzon*, 571 Pa. 419, 435, 812 A.2d 617, 627 (Pa. 2002)) ("An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate 'the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.'").

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/26/2017