J-S72042-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL C. CROOM, | : | |
| | : | |
| Appellant | : | No. 506 MDA 2016 |

Appeal from the Judgment of Sentence February 23, 2016
in the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0001238-2015

BEFORE:    GANTMAN, P.J.,DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 09, 2016**

Daniel C. Croom (Appellant) appeals from the judgment of sentence entered on February 23, 2016, after he was found guilty of endangering the welfare of children (EWOC), two counts of simple assault, and two counts of conspiracy.[1]  We affirm.

The pertinent factual history of this case was summarized by the trial court as follows.

> On September 14, 2014 at 12:38[p.m.], Officer [Michael Sansosti] responded to a call from 500 South 15[th] Street in the city of Reading.  Arriving at the residence, Officer [Sansosti] met [D.D.], an eleven-year old boy, and his aunt, Marlene Thomas. Prior to arriving at his aunt's house, [D.D.] fled his mother [(Mother)] and Appellant's residence in significant fear.  Before speaking with [D.D.], the officer was handed a letter written by [him.]  The letter said:

---

[1] Specifically, Appellant was convicted of conspiracy to commit EWOC and conspiracy to commit simple assault.

*Retired Senior Judge assigned to the Superior Court.

Here is my statement[.] I am having abusive issues in this house[.] I can't take it anymore[.] I've been beaten until my butt was raw[.] I have internal bruising on my chest[,] neck[,] and I am supposed to be at school today but I am not[.] I am not sick[,] I do not have any appointment[,] it is just that [M]other and [Appellant] are trying to cover up the situation[.] I have been choked by [M]other[.] I've been punched in the head while I was asleep by [Appellant.] He threated to knock me out[.] He also threated to punch me in my temple[.] I will be running away goodbye I need out of this house.

After reviewing the letter, Officer [Sansosti] asked "[D.D. what he] meant by things… in the letter." [D.D.] responded that he had been beaten by Appellant, [M]other's boyfriend, that morning and on other occasions. Also, [D.D.] mentioned to the officer that he had recently been hit in the chest by Appellant with an open palm. Appellant doled out this abuse because [D.D.] felt ill, [threw] up in a sink, and clogged the sink. Following his conversation with [D.D.], Officer [Sansosti] took several pictures of the child's old and new scars and bruises. Officer [Sansosti] recommended that the child be taken to receive medical attention.

At the hospital, Dr. Frank Moyes observed contusions located under [D.D's] right eye, his chest, his right backside, and his right thigh. None of these injuries needed further treatment. While the extent of injuries at the hospital was limited to contusions, [D.D.] reported to several individuals and stated [to the trial court] that he had been subjected to many instances of abuse by [Appellant] and, on occasion, to the physical abuse perpetrated by [] Mother and Appellant.

Appellant independently abused [D.D.] on many instances. … First, in one instance, Appellant slapped [D.D.] so hard that his head felt dizzy. Here, the proffered justification was [D.D.] had been accused of peeing in his brother's mouth. Second, on another occasion, Appellant slammed [D.D.'s] head into a work bench, cutting [D.D.'s] head and leaving a scar. The justification for this assault, given by [D.D.], was that he had hit his brother in the face. On a third occasion, for an unexplained reason, [D.D.] was told to lean against a work bench and he was struck three times by Appellant. In protestation, [D.D.] began to

- 2 -

struggle and resist further punishment. Then, in response, Appellant flipped [D.D.] on his back and beat [his] buttocks. On a fourth occasion, Appellant hit [D.D.] with a closed fist seven times in the head. [D.D.] did not remember the provocation for this assault.

Furthermore, Appellant and [Mother] jointly assaulted [D.D.] on numerous occasions. On one such occasion, Appellant and [Mother] dipped a belt in water and then proceeded to whip [D.D.] with it. On another occasion, Appellant and [Mother] had discussed how to beat [D.D.] and simulated such actions on his sister. At apparently no provocation, Appellant then asked [D.D.] to pull his pants down and proceeded to spank [D.D.] five times. Moreover, even when Appellant perceived that [Mother] was being [abusive,] when she threw a spoon at [D.D.'s] neck cutting him, [Appellant] only questioned her actions.

At trial, Amy Prosser, a former social worker and friend of [D.D., corroborated] many of these instances of abuse. When appropriate, she had reported many of these instances to Children and Youth Services. Finally, a social worker took the stand and also [corroborated] that [D.D.] had told her about many of the aforementioned assaults.

Trial Court Opinion, 5/31/2016, at 3-4 (citations and unnecessary capitalization omitted).

Appellant was found guilty of the above-mentioned crimes following a jury trial on February 23, 2016. That same day, Appellant was sentenced to an aggregate term of four to thirteen years' incarceration with credit for time served, followed by ten years' probation. Appellant timely filed post-sentence motions challenging the sufficiency and weight of the evidence, as well as the discretionary aspects of his sentence. On March 3, 2016, Appellant's motion was denied. This appeal followed.[2]

---

[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

- 3 -

Appellant raises the following claims for our review.

1. Whether the evidence presented is insufficient to sustain a finding of guilt against [] Appellant for the crimes of [EWOC], and conspiracy to [commit EWOC] because the Commonwealth failed to prove beyond a reasonable doubt that Appellant violated his duty of care to [D.D.], and conspired with [Mother] to violate this duty of care?

2. Whether the verdict of guilty against Appellant for [EWOC], conspiracy to [commit EWOC], simple assault[,] and conspiracy to commit simple assault is contrary to the weight of the evidence presented, where the testimony provided by the juvenile was not credible, inconsistent[,] and contradicted by the testimony of other witnesses?

3. Whether the trial court abused its discretion by sentencing Appellant to a term of [four to thirteen years of incarceration] in a state correctional institution followed by ten [] years of probation, and prohibiting [Appellant] from having unsupervised contact with his own children, which was manifestly excessive, inflicts a punishment too severe under the facts of the case, and fails to consider the rehabilitative needs of [Appellant?]

Appellant's Brief at 13-14 (suggested answers and unnecessary capitalization omitted).

We begin with Appellant's challenge to the sufficiency of the evidence, mindful of our standard of review.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no

- 4 -

probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (internal quotation marks and citations omitted).

[T]o support a conviction under the EWOC statute, the Commonwealth must establish each of the following elements: (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Wallace*, 817 A.2d 485, 490–91 (Pa. Super. 2002) (internal quotation marks omitted).

Appellant avers the Commonwealth failed to present sufficient evidence that he had committed or conspired to endanger the welfare of a D.D. Appellant's Brief at 22-23. Specifically, Appellant contends that "the evidence presented at trial was insufficient to prove beyond a reasonable doubt that [Appellant] violated a duty of care owed to [D.D.]." *Id.* at 24. In support, Appellant argues that in order to violate his duty of care he "must

- 5 -

be aware that the circumstances could threaten the child's psychological welfare." *Id.* Here, Appellant claims that there was no need for medical emergency services or evidence presented that the bruises seen on D.D.'s body were the result of abuse by Appellant. *Id* at 25. Furthermore, Appellant avers the testimony by third parties indicated that these incidents, which Appellant contends were described to them by D.D., as nothing "more than smacks on the back of his head… stemmed from behavioral issues [D.D.] was experiencing." *Id.* Likewise, Appellant contends there was no evidence that Appellant and Mother conspired to endanger D.D. *Id.*

In its 1925(a) opinion, the trial court offered the following analysis:

> First, the record shows that a duty of care existed between Appellant and [D.D.]. The evidence at trial showed that Appellant was the boyfriend of [Mother,] Appellant lived in the house with [D.D.], and Appellant was routinely assigned [disciplinary functions by Mother]. As such, [Appellant] took on the role of a guardian and the accompanying duties. Second, [D.D.] was under eighteen at the time, in fact he was around eleven years old. Third, the Commonwealth has presented sufficient evidence that Appellant's duty of care was violated. Here, Appellant routinely physically abused [D.D.]. For example, testimony was presented that Appellant hit [D.D.] in the head, slapped [D.D.] in the head and chest, beat [D.D.] with a belt, slammed [D.D.'s] head into a work bench, and arbitrar[ily] spanked [D.D.]. [Corroborating] some of this testimony were pictures of contusions and scars on [D.D.], as well as medical testimony about some recent bruises. In addition to his own physical abuse of [D.D.], Appellant also failed to react to the physical abuse when perpetrated by [Mother]. At trial, [D.D.] testified that on one occasion a spoon had been tossed at him by [Mother] cutting his neck. Appellant permitted the abuse to occur and only question[ed] those actions. He did not remove [D.D.] from the abusive situation or provide any further support to [D.D.].

* * *

> The Commonwealth introduced evidence that Appellant and [Mother] had on occasion discussed how to beat [D.D.]. More importantly, on several occasions, Appellant acted at the [behest] of [Mother] to carry out the abuse on [D.D.]  Finally, in one instance of particularly cruel abuse, Appellant and [Mother], together, dipped a belt in water and then proceeded [to whip D.D.] with it.  A reasonable jury could easily conclude that Appellant and [Mother conspired to endanger the welfare of D.D.].

Trial Court Opinion, 5/31/2016, at 6-7.

In reviewing the evidence in light most favorable to the prevailing party, we agree with the trial court that a reasonable jury could conclude that Appellant both committed and conspired to endanger the welfare of D.D.  Specifically, we find the evidence of abuse presented by the Commonwealth could support the conclusions that: (1) Appellant was aware that actions were a threat to D.D.'s physical and psychological well-being and, (2) Appellant's actions and inactions, both personally and in concert with Mother failed to protect D.D.'s welfare.  **See Wallace**, 817 A.2d at 491–92 ("The language of the statute requires that the Commonwealth prove that the accused 'endangers the welfare of the child.'  'Endanger' is defined as 'put[ting] (someone or something) at risk or in danger.'  'Risk' is defined as 'a situation involving exposure to danger.'  But the statute does not require the actual infliction of physical injury. **Nor does it state a requirement that the child or children be in imminent threat of physical harm. Rather it is the awareness by the accused that his**

**violation of his duty of care, protection and support is 'practically certain' to result in the endangerment to his children's welfare, which is proscribed by the statute.**") (citations omitted; emphasis added).

Conversely, we cannot agree with Appellant that the evidence presented was so unreliable or speculative as to preclude a finding of guilt. *See Commonwealth v. Hughes*, 908 A.2d 924, 928 (Pa. Super. 2006) ("[T]he evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances"). Accordingly, Appellant's sufficiency challenge fails*.*

Appellant next claims that the verdict was against the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The

propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

**Commonwealth v. Widmer**, 560 Pa. 308, 321-22, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

Appellant's argument that the verdict is against the weight of the evidence is based upon the "inconsistent, unclear, incredible" testimony that was "contradicted" by several others who testified.  Appellant's Brief at 28.

Appellant's attack on the inconsistencies in the evidence is meritless. His attempt to persuade this Court that the verdict was against the weight of the evidence based solely on D.D.'s testimony and how it varied and conflicted with other testimony presented is unavailing.   Reconciling inconsistencies in the testimony was within the province of the fact-finder. **See Commonwealth v. Chamberlain**, 30 A.3d 381, 396 (Pa. 2011) ("A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant.").

Furthermore, Appellant's weight claim dismisses the plethora of evidence presented to support D.D.'s testimony that he was abused by Appellant and Mother.  The trial court found that "Appellant's assertion of a lack of credibility mischaracterizes [D.D.'s] testimony, as the physical evidence of his injuries corroborated his testimony."  Trial Court Opinion, 5/31/2016, at 9.  Dr. Frank Moyes testified these injuries include "some

abrasions and some contusions. The contusions were located over his right eye [on D.D.'s] left side, his chest, and on his right back side[, and] his right thigh." N.T., 2/22/2016, at 42. D.D. also presented with an abrasion and contusion on his left arm. *Id.* Additionally, Amy Prosser and Katie High both testified that D.D. had reported several incidents of abuse to them, corroborating D.D.'s testimony that he was being abused by Appellant and Mother.

Here, the jury had the opportunity to hear all evidence presented and assess the credibility of those who testified. This included listening to defense counsel speak at length during closing about the inconsistences in the testimony presented. Despite this, it is evident by the jury's verdict that they found that not only was D.D. credible, but that his testimony, in conjunction with the additional testimony and evidence presented supported the finding that Appellant inflicted and conspired to inflict physically abuse upon D.D. For the foregoing reasons, Appellant has failed to convince us that the trial court abused its discretion in holding that the verdict was not against the weight of the evidence.

Appellant's final issue challenges the discretionary aspects of his sentence.

> Sentencing is a matter vested in the sound discretion of the
> sentencing judge, and a sentence will not be disturbed on appeal
> absent a manifest abuse of discretion. In this context, an abuse
> of discretion is not shown merely by an error in judgment.
> Rather, the appellant must establish, by reference to the record,
> that the sentencing court ignored or misapplied the law,

exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

* * *

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014)

(internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014)

(some citations omitted).

The record reflects that Appellant timely filed a notice of appeal and that Appellant preserved the issue by timely filing a motion for reconsideration of his sentence. Moreover, Appellant has included in his

brief a statement pursuant to Pa.R.A.P 2119(f). We now turn to consider whether Appellant has presented substantial questions for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

In his 2119(f) statement, Appellant avers "the sentencing court ignored Appellant's request to consider a county imprisonment sentence. Furthermore, the sentencing court did not consider the requisite sentencing factors, namely the rehabilitative needs of the [Appellant], his remorse displayed during allocution and the fact that he was gainfully employed." Appellant's Brief at 13. Appellant also argues the trial court erred by prohibiting him from having unsupervised contact with his other minor children, especially since "there was no evidence presented that [Appellant's] other three children suffered any abuse[.]" Appellant's Brief at 30-31.

> This Court has also held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question. Additionally:

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Commonwealth v. Swope*, 123 A.3d 333, 339–40 (Pa. Super. 2015) (internal quotations and citations removed). Thus, we conclude Appellant has raised a substantial question and proceed to review the merits of the issue.

The trial court set forth the following reasoning at Appellant's sentencing hearing:

> I have taken into account many things. I have reviewed the [pre-sentencing investigation report (PSI)], of course. I have taken into account the testimony that I heard in not only the trial these last two days, but in previous proceedings. I've taken into account, most important of all, the jury's verdict. The jury's verdict is the most important aspect of these proceedings and the jury has spoken and determined that [Appellant] was guilty of significant offenses here and rejected the notion that whatever was done to [D.D.] was legitimate disciplinary action. The conclusion is not surprising, giving [*sic*] the extent of bruising visible on the photographs that were in evidence here.

> [Appellant's] record is one largely based on violent acts. It's very disturbing. And one of the things that was most disturbing to me, upon hearing the testimony of the last two days, which was really underscored today with the testimony of Ms. High, and that is, it doesn't appear that [Appellant] assaulted his own children who I believe he shares with [Mother], but brutalized a child that she had, the victim in this case [D.D.] with someone other than [Appellant]. That's

- 13 -

profoundly disturbing to me and influences the long-term sentence.

I've taken into account the provisions of the sentencing code, I've taken into account the provisions of the sentencing guidelines, the recommendations of both parties, and I've taken into account [Appellant's] allocution, although I have to say that I was not overwhelmed with a [sense] of sincerity from [Appellant], other than the circumstances under which he stands.

N.T., 2/23/2016, at 144-145. Here, before sentencing, the court heard the applicable guidelines and recommendations for sentencing. The sentencing court then proceeded to provide a summary of what the court considered when fashioning Appellant's sentence. Contrary to Appellant's assertions, the sentencing court, on the record, relayed that it had considered Appellant's recommendations (for a county prison sentence), allocution, and PSI.[3]

Appellant also claims the trial court's "speculation that [D.D.] was the subject of abuse because he was not [Appellant's] biological child is not supported by the record and inappropriate extra judiciary consideration." Appellant's Brief at 30. We find Appellant's assessment of the sentencing court's "speculation" unsupported by the record. Specifically, the sentencing transcript reveals that the trial court did not find that the reason D.D. was

---

[3] Furthermore, "[w]here the sentencing court had the benefit of a [PSI], we can assume the sentencing court 'was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" *Griffin*, 65 A.3d at 937 (quoting *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988)).

- 14 -

abused was because he was not Appellant's biological child, only that it appeared Appellant did not mistreat his own biological children and only abused D.D. **See** N.T., 2/23/2016, at 145.

Lastly, Appellant claims the sentencing court erred by permitting only supervised visitation with his children. Specifically, Appellant avers "there is no evidence presented that [his] other three children suffered any abuse and in fact, when questioned by CYS, they all stated they were not afraid of their parents and reported a good relationship with [Appellant]." Appellant's Brief at 30.

It is well-settled that when imposing probation, a sentencing court may require a defendant "[t]o satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience." 42 Pa.C.S. § 9754(c)(13). Appellant baldly asserts that the sentencing court wrongly imposed supervised visitation with his children without any accompanying case law to support his argument. We decline to make his argument for him. Thus, Appellant has failed to convince us that the trial court abused its discretion in ordering visitation with his biological children to be supervised. **See Commonwealth v. Dewey**, 57 A.3d 1267, 1270 (Pa. Super. 2012) (holding the trial court's imposition of supervised visitation with his minor daughter after he pled guilty of corruption of minors was "reasonably related to his rehabilitation and not unduly restrictive of his liberty as required under

42 [Pa.C.S.] § 9754(c)(13)"); ***Commonwealth v. Reggie***, 399 A.2d 1125, 1126 (Pa. Super. 1979) (approving a condition of probation requiring a defendant "to keep away from juveniles and young adults").

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2016