**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSHUA MOSHA HARDING, | : | |
| | : | |
| Appellant | : | No. 1373 MDA 2016 |

Appeal from the Judgment of Sentence April 29, 2016
in the Court of Common Pleas of York County,
Criminal Division, at No(s): CP-67-CR-0007614-2013

BEFORE:    BENDER, P.J.E., OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:              **FILED AUGUST 02, 2017**

Joshua Mosha Harding (Appellant) appeals from his April 29, 2016 aggregate judgment of sentence of four to eight years of imprisonment after he was found guilty of possession with the intent to deliver a controlled substance, aggravated assault, escape, and simple assault.  Counsel has filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967).  We deny counsel's motion to withdraw and remand for counsel to file an advocate's brief.

The trial court summarized the evidence offered at trial as follows.

> The Commonwealth presented five (5) witnesses at trial, who are Trooper James O'Shea ("O'Shea"), Officer Matthew Kile ("Kile"), Trooper Jeffrey Gotwals ("Gotwals"), Detective Craig Fenstermacher ("Fenstermacher") and Ms. Holly Urban ("Urban").

_____
*Retired Senior Judge assigned to the Superior Court.

On September 23, 2013, [] O'Shea and [] Kile went to the upstairs apartment of 312 East Middle Street, Hanover, Pennsylvania ("the residence") with arrest warrants for Joseph Weaver ("Weaver") and Urban for delivery of controlled substances, including heroin and [the prescription opioid] Opana. Both O'Shea and Kile wore their tactical vests to the residence, and O'Shea's vest included the words "State Police" on the front. Similarly, Kile's vest had the words "police" on the front of the vest. Prior to that date, O'Shea had worked undercover, where [he] had made drug purchases outside the residence and in the residence's kitchen.

Earlier that day on September 23, Appellant went to the residence, wearing a dark blue jacket, and Urban confirmed that Exhibits 30 and 21 were pictures of the same jacket Appellant wore ("the jacket"). Appellant went to the residence because Urban owed him money, partially for drugs. After arriving, Appellant took off the jacket and placed it on the back of a chair. Urban testified that Weaver, who was her boyfriend at the time the incident occurred, did not own that jacket or a similar one and that the jacket would not fit Weaver since it would be too big for Weaver.

Urban saw what she described as drugs in Appellant's hand in her kitchen. When asked which one it was, Urban identified a bag in Exhibit 28, that Defense Counsel pointed out was "the one with rice in it," [t]hough, on September 23, Urban believed it was heroin "because she tried to inject it" around 5:00 p.m. and because [Appellant] had told her the baggy contained heroin, though she did not feel high after injecting it. She was not high before [Appellant] had gotten to their residence, and she stated that she had drug paraphernalia but not any other drugs in the house.

Once they arrived at the residence, O'Shea and Kile knocked on the residence's door, where Urban, who was inside the residence, asked who they were. O'Shea stated "yo, it's Jimmy," and she let them inside. Once Urban opened the door, O'Shea saw Weaver sitting near the end of the table on the right side, and [Appellant] sat on the table's left side, "with his back against the wall." Then, O'Shea advised Urban and Weaver of the arrest warrants and that they would take them into custody. After he advised Urban and Weaver, O'Shea handcuffed Urban near the front door, and Kile attempted to put Weaver in

- 2 -

handcuffs; however, Kile was unable to put the handcuffs on Weaver, due to Weaver's arm being disabled.

After handcuffing Urban, O'Shea asked for Appellant's identification and name, but Appellant said nothing. Instead, Appellant stood and walked around the table. Suspecting that "something just wasn't right," O'Shea informed Appellant that he was going to handcuff him for safety reasons. [] O'Shea instructed Appellant to "put his hands behind his back." Meanwhile, Kile saw O'Shea interacting with Appellant and had heard their voices become heightened. During the trial, O'Shea testified that [Appellant] was not free to leave once O'Shea instructed Appellant about the handcuffs.

On cross-examination, O'Shea testified that he remembered the clicking of handcuffs, but he did not visually remember if he had "put one handcuff on [Appellant]." According to O'Shea on direct examination, "I remember hearing the clicking of the handcuffs, at which point [Appellant] pulled away with his right arm and swung back around and struck me in the right side of my face."

Urban and Kile also testified about this first strike. Urban testified that she saw Appellant put his hands behind his back and saw Appellant punch Trooper O'Shea's right side of his head. Urban says that O'Shea was hit several times, but this contradicts O'Shea's and Kile's testimony that it was one time.

Detective Kile also witnessed this event and provided additional testimony about this initial strike. Kile testified that before Kile could place Weaver into custody, he saw Appellant "swing -- lunge a closed fist at Trooper O'Shea." Specifically, Kile "observed [Appellant's] arm going towards Trooper O'Shea's head." When the Commonwealth asked Kile about if he had "observe[d] any part of [Appellant's] body or anything connected to [Appellant's] body make Contact with Trooper O'Shea," Kile responded that "it would have been his hand hitting Trooper O'Shea's head. I saw Trooper O'Shea heading towards the ground."

After Appellant struck O'Shea, Kile attempted to take Appellant's "legs out from underneath him to put him onto the ground so that he could successfully be placed into custody," but Appellant broke free of this attempt. Specifically, Kile and

Appellant fell onto the kitchen table, and then onto the ground. When both stood, Appellant was free. When the Commonwealth asked about whether Appellant "kick[ed] or push[ed] or in any way tr[ied] to push off [Kile] to get away," Kile responded that "it would have been pushing, like a wrestling match, kind of pushing me down to get up kind of thing." [] Kile's neck had minor scratches from the altercation. Then, Kile saw blood running down O'Shea's head.

Urban testified that Weaver and she stood "by the doorway from the kitchen into the hallway" and at no point did they get into the fight or move toward the kitchen. Urban also stated that she and Weaver were always in the officer's sight and in handcuffs.

After the altercation, Kile placed Weaver into custody by handcuffing him and having him sit against the wall next to Urban, and then put handcuffs on Appellant, while he was lying down. Appellant, Weaver, and Urban were removed from the residence, and at no point were Appellant, Weaver or Urban left without police supervision inside the house. It should be noted though, for thoroughness that Kile did not do a pat down of Urban or Weaver.

The evidence showed pictures of the inside of O'Shea['s] lip, which was split open on September 23 and required three staples at the emergency room. As a result of the September 23rd events, O'Shea has suffered memory loss, including about the incident with Appellant. In fact, O'Shea did not remember being struck by [Appellant] after the initial strike. Further, O'Shea's finger was broken during the altercation with Appellant and needed to be splinted, and O'Shea required an unspecified number of staples for the laceration on his head.

Jeffrey Gotwals was the lead criminal investigator, who performed an investigation on September 23, 2013 at that address, starting at 2017 hours. Trooper Scott Denisch, Trooper Deanna Sell (the forensic unit technician), and Corporal Wise (who was Gotwal's crime supervisor) assisted him. Deanna Sells physically picked up the evidence, and Gotwals observed. One of the items picked up was "a blue jacket that says New York on the back." Gotwals saw the jacket on a chair at the kitchen table, and he states that the jacket "was off to the left by the window where the table was when Trooper O'Shea entered the

room." A picture of the jacket was taken after going through the jacket's pockets and upon Corporal Wise discovering "a baggy with rice and little packets of heroin" from the jacket pockets.

Some of the items found in the jacket were field tested positive for heroin. Gotwals then sent them to a lab in Harrisburg for further testing. The results of the items that Gotwals sent came back were: "Substance of Item 2.1 weighing 2.7 grams contained heroin, Schedule I drug." Gotwals noted that the rice found inside one of the bag as well as packets can be used for selling heroin, and some of the bags were stamped with the words "funny money."

Further, a wallet was found on the front porch downstairs. Money, Appellant's Social [S]ecurity card, a driver's license for a woman named Diana Negron and some Access cards were in the wallet. Besides the heroin found in the jacket, no other drugs were found in the kitchen or in plain view in the apartment. Lastly, three cell phones were collected. Weaver and Urban reported to investigators that one of the cellphones belonged to Weaver and Urban and that the other two belong to Appellant.

During the trial, [] Fenstermacher was qualified as an expert in the area of "how drugs are packaged and sold in York County." In York County, "[v]ery small amounts of heroin are typically packaged in small wax or glassine bags." If it's more than a very small amount of heroin, the heroin "can be put in a plastic bag in baggy corners." Fenstermacher looked at a copy for the Pennsylvania State Police laboratory report for this case, which provided two of the discovered bags of heroin's weights as 2.74 grams and 1.1 grams for a total of 3.84 grams of heroin. The street value of 3.84 grams would be approximately $1,600 street value. Exhibit 28 included 45 glassine bags with a stamp on each, and these were used by Kathie Martin who prepared the report.

Fenstermacher stated that the items were packaged in a way that is consistent with packaging heroin in the county. Fenstermacher further stated that "typically, [Access cards and other forms of identity] ... may be traded for drugs" or used as collateral. When the Commonwealth asked whether Fenstermacher had an opinion about the intent to distribute the heroin, Fenstermacher testified that "based on the manner, the location, the quantity and the surrounding factors, I do ... My

belief is that this heroin was possessed for the purposes of distribution to another person." His opinion was held to "a reasonable degree of professional certainty as it relate[d] to [Fenstermacher's] experience."

Trial Court Opinion, 10/18/2016, at 4-13 (footnotes omitted).

Prior to trial Appellant filed a motion to suppress the evidence, averring he was unlawfully arrested. The trial court denied the motion as untimely filed. Following a jury trial, Appellant was found guilty of the aforementioned crimes and sentenced soon thereafter. Appellant timely filed a post-sentence motion, and following the denial of his motion, timely filed a notice of appeal. The trial court ordered the filing of a statement of errors complained of on appeal, and Counsel complied.

However, in this Court, in lieu of a brief in support of Appellant's appeal, counsel filed both an *Anders* brief and a petition to withdraw as counsel. Accordingly, the following principles guide our review.

> Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof….
>
> *Anders* counsel must also provide a copy of the *Anders* petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of *Anders*, this Court will deny the petition to withdraw and remand the case with appropriate instructions

(*e.g.*, directing counsel either to comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

**Commonwealth v. Wrecks**, 931 A.2d 717, 720-21 (Pa. Super. 2007)

(citations omitted). Further, our Supreme Court has specified the following

requirements for the **Anders** brief:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Based upon our examination of counsel's petition to withdraw and

**Anders** brief, we conclude that counsel has substantially complied with the

technical requirements set forth above.[1] Because Appellant filed a response

---

[1] Counsel's letter to Appellant incorrectly advised him that Appellant's ability to retain private counsel or proceed *pro se* was contingent upon this Court allowing counsel to withdraw. By order dated February 8, 2017, this Court advised Appellant that he could respond to counsel's petition, either *pro se* or through privately retained counsel, within thirty days. Appellant has filed a response.

to counsel's **Anders** brief, we need only address the issues raised within the brief and Appellant's *pro se* response.

> By filing a *pro se* response, as in this case, or hiring private counsel, the appellant has essentially filed an advocate's brief. It is well-settled that when an advocate's brief has been filed on behalf of the appellant, our Court is limited to examining only those issues raised and developed in the brief. We do not act as, and are forbidden from acting as, appellant's counsel. Accordingly, our independent review is logically limited in the situation presented herein. If we conduct an independent review of the entire record, and conclude that there are no non-frivolous issues to be found anywhere therein, we have rendered the appellant's right to proceed *pro se* or to hire private counsel, meaningless. There would be no point in allowing a *pro se* or counseled filing if we had already determined any issue raised therein was frivolous.

**Commonwealth v. Bennett**, 124 A.3d 327, 333 (Pa. Super. 2015).

In his **Anders** brief, counsel avers that Appellant wishes to challenge the weight and sufficiency of the evidence to sustain his convictions. **Anders** Brief at 9.

In reviewing Appellant's sufficiency claims, we are mindful of the following.

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 72 A.3d 706, 707-08 (Pa. Super. 2013) (internal citations and quotations omitted). The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant. *Commonwealth v. Markman*, 916 A.2d 586, 598 (Pa. 2007).

To sustain a conviction for the crime of possession with intent to deliver a controlled substance, the "Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. It is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with intent to deliver." *Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa. Super. 2008).

Because Appellant was not found with heroin on his person, the Commonwealth was required to establish that Appellant had constructive possession of the controlled substance. *Commonwealth v. Kirkland*, 831 A.2d 607, 610 (Pa. Super. 2003).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004) (internal

citations omitted).

In his *pro se* response to counsel's **Anders** brief, Appellant contends:

(1) Urban had direct sales with the drug task force; (2) the drugs were

found in Urban's residence; (3) no physical evidence linked Appellant to the

jacket where the drugs were found; and (4) Appellant did not have any

drugs on his person at any time. Appellant's *Pro Se* Response, 4/11/2017,

at 1-2 (unnumbered).

The trial court responded to Appellant's sufficiency challenge as

follows.

> Giving the Commonwealth all reasonable inferences, the jury could have found beyond a reasonable doubt that Appellant possessed the heroin with intent to deliver it. Testimony provided by Urban showed that Appellant wore a dark blue jacket to her home. When shown the jacket where the heroin was discovered, Urban testified that it was the one that Appellant was wearing when he came to her home, that he had taken it off, and that Weaver, the only other person in the home at that time, would be too small for the jacket.
>
> In addition to Urban's testimony[,] Gotwals provided testimony about the street value of the [heroin], how the [heroin] was discovered in the jacket and about the wallet found on the porch. Inside the wallet were items that Gotwals testified to being typical when selling drugs. Detective Fenstermacher, who was qualified as an expert during trial, gave further testimony that in his opinion based on the amount, packaging and other circumstances surrounding the discovered drugs that the drugs were intended to be sold.
>
> As such, there was enough evidence for the jury to find Appellant guilty beyond a reasonable doubt for possession with intent to deliver. Accordingly, the jury verdict should stand.

Trial Court Opinion, 10/18/2016, at 17-18 (footnotes omitted).

Upon review, we agree with the trial court and find that there was sufficient evidence presented to show Appellant constructively possessed the heroin with the intent to deliver it. In finding as such, we remind Appellant that "the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Hughes*, 908 A.2d 924, 928 (Pa. Super. 2006).

Next we address Appellant's aggravated assault conviction. A person may be convicted of aggravated assault of a police officer if he "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers … in the performance of duty." 18 Pa.C.S. § 2702(a)(3). The trial court summarized the following evidence to support its finding that the evidence presented was sufficient to sustain Appellant's conviction for aggravated assault under the above-mentioned subsection.

> When viewed in the light most favorable to the Commonwealth as the verdict winner, we find there was sufficient evidence to convict Appellant of [a]ggravated [a]ssault. Giving the Commonwealth all reasonable inferences as the verdict winner, the jury could have found beyond a reasonable doubt that Appellant intentionally or knowingly caused bodily injury to [] O'Shea, who is a member of law enforcement. The testimony discussed earlier by [] O'Shea, [] Kile, and Holly Urban all show that Appellant struck [] O'Shea, causing an injury on his head, which required an unspecified number of staples, and [injury to

his] finger. The conduct described by the previous witnesses suggest that Appellant intentionally or knowingly caused the injury to O'Shea. Therefore, there was enough evidence for the jury to find Appellant guilty beyond a reasonable doubt. Accordingly, the jury verdict should stand.

Trial Court Opinion, 10/18/2016, at 19-20 (footnotes omitted).

We agree. There was ample evidence introduced that Appellant struck O'Shea, who was wearing a vest indicating that he was a police officer, and that Appellant's actions, when viewed in a light most favorable to the Commonwealth, could allow a jury to reach the conclusion that Appellant intentionally or knowingly caused bodily injury to O'Shea.

Likewise, we find the evidence sufficient to sustain Appellant's conviction for simple assault. "Pursuant to 18 Pa.C.S.A. § 2701, '[a] person is guilty of [simple] assault if he: (1) attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another.' 18 Pa.C.S.[] § 2301 defines 'bodily injury' as '[i]mpairment of physical condition or substantial pain.'" **Commonwealth v. Klein**, 795 A.2d 424, 428 (Pa. Super. 2002). As indicated by the trial court, testimony from the officers and Urban established that Appellant hit O'Shea on the side of the head. This caused injury to his face and required staples. With this evidence, a fact-finder could find that Appellant's conduct amounted to simple assault against the officer.

We now address Appellant's final sufficiency claim regarding the offense of escape. In his **Anders** brief, counsel bases his opinion of the

frivolity of this issue upon the fact that Appellant was placed into "official detention" when he was instructed to put his hands behind his back and that "Appellant did not comply … and when [the officer] was attempting to put the handcuffs on [Appellant, Appellant] swung his arms and struck the officer in the right side of the face." *Anders* Brief at 14. This evidence, he avers, is enough to prove that Appellant violated the statute. *Id.*

An individual commits the offense of escape when "he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period." 18 Pa.C.S § 5121. As summarized by the trial court, the evidence presented at trial with regard to the charge of escape was as follows:

> The testimony that was discussed earlier in this opinion demonstrated that Appellant attacked O'Shea while O'Shea had attempted to handcuff him and that Appellant was not free to leave. Appellant's official detainment began once O'Shea instructed him to put his hands behind his back, during and after Kile and Appellant had an altercation. After [Officer] Kile and Appellant had an altercation where both were on the ground, Appellant stood up anyway when a reasonable person would not have felt that they could do so. As such, there was enough evidence for the jury to find Appellant guilty beyond a reasonable doubt. Accordingly, the jury verdict should stand.

Trial Court Opinion, 10/18/2016, at 21-22.

Upon a review of the record, while case law suggests that Appellant was in official detention for the purposes of proving the first element of escape, *see Commonwealth v. Stewart*, 648 A.2d 797 (Pa. Super. 1994),

- 13 -

it is not clear to us that Appellant's conduct constituted "removing" himself from said detention as contemplated by the statute.

By no means is this Court convinced that Appellant is entitled to relief on this issue. However, the claim is not so clearly devoid of merit to warrant classifying this appeal as frivolous. From our review, it appears that counsel has the factual and legal bases to put forward a good-faith argument.

Lastly, while he avers in his *pro se* response to counsel's brief that "there are various claims of arguable merit pertaining to this case[,]" in addition to Appellant's arguments concerning his possession conviction, Appellant only sets forth with specificity the following: (1) "All evidence falls under 'fruits of a poisonous tree' due to violation of" Pa.R.Crim.P. 207 and the "illegal arrest of the appellant," and (2) various claims alleging appellate counsel's ineffectiveness. Appellant's *Pro Se* Response, 4/11/2017.

With regard to the latter claim, because Appellant is currently on direct appeal, his ineffectiveness claims cannot be addressed at this stage. Except in rare circumstances not present here, ineffective-assistance-of-counsel claims can be raised only on collateral review. ***See Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013) ("[C]laims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal.").

With respect to his former argument, as stated *supra*, Appellant did file a motion to suppress, averring his arrest was illegal and thus all evidence seized as a result was inadmissible. It appears the trial court never ruled on the merits of this motion, instead denying the motion as untimely filed. **See** N.T., 8/5/2015 at 2 ("I'm going to deny the motion to suppress at this point in time because it's untimely. It's untimely by about 21 months"). The record is devoid of any reference after this date that Appellant challenged the court's ruling to deny the motion as untimely, nor does Appellant cite any support to prove that the suppression motion was argued at a later date, and our cursory review of the record can find no such documentation.[2] Because the trial court never ruled on the merits of the motion, and because he makes no argument that the trial court's finding of untimeliness was erroneous, we see no merit to the suppression claim.

In light of the foregoing, we agree with counsel that Appellant's issues challenging the sufficiency of the evidence to sustain his convictions for possession with the intent to deliver a controlled substance, aggravated assault, and simple assault are frivolous. Moreover, we find Appellant has presented no issue within his *pro se* response which would convince us to

---

[2] Prior to trial and during a period of time when Appellant was proceeding *pro se*, he filed a *motion in limine*, requesting the suppression of evidence. **See** *Motion in Limine*, 11/2/2015. Soon thereafter counsel entered his appearance on behalf of Appellant. From our review of the record, it does not appear that Appellant's *pro se* motion was ever presented at a hearing or ruled upon by the trial court.

disturb his judgment of sentence. However, because we have identified a potentially non-frivolous issue, we deny counsel's motion for leave to withdraw and remand the case for counsel to file an advocate's brief. [3]

Motion for leave to withdraw denied. Case remanded with instructions. Panel jurisdiction retained.

---

[3] At this time, in light of our disposition, we decline to address Appellant's issue concerning the weight of the evidence to sustain his convictions.